UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| IRENE S. A.,[1] | Case No.  20-cv-09361-RMI |
| Plaintiff, | |
| v. | **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| KILOLO KIJAKAZI, | Re: Dkt. Nos. 15, 16 |
| Defendant. | |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits under Title II of the Social Security Act. *See* Admin. Rec. at 15-24.[2] Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council (*see id*. at 1-5), thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 7, 8), and both parties have moved for summary judgment (dkts. 15, 16). For the reasons stated below, Plaintiff's motion for summary judgment is granted, and Defendant's motion is denied.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in seventeen attachments to Docket Entry #12. *See* (dkts. 12-1 through 12-8).

1    aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal

2    error. *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase

3    "substantial evidence" appears throughout administrative law and directs courts in their review of

4    factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

5    Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as

6    adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

7    197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In

8    determining whether the Commissioner's findings are supported by substantial evidence," a

9    district court must review the administrative record as a whole, considering "both the evidence

10   that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v.

11   Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where

12   evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676,

13   679 (9th Cir. 2005).

**PROCEDURAL HISTORY**

14

15           In December of 2017, Plaintiff filed an application for Title II benefits alleging an onset

16   date of April 13, 2014 (which was later amended to April 11, 2015). AR at 15. On August 9, 2019,

17   an ALJ entered an unfavorable decision, finding Plaintiff not disabled. *See id*. at 15-24. In October

18   of 2020, the Appeals Council denied Plaintiff's request for review. *Id*. at 1-5. Two months later, in

19   December of 2020, Plaintiff sought review in this court (*see* Compl. (dkt. 1) at 1-2) and the instant

20   case was initiated.

**SUMMARY OF THE RELEVANT EVIDENCE**

21

22           Plaintiff raises three claims, two of which assert that the ALJ improperly evaluated the

23   medical opinions and Plaintiff's testimony. *See* Pl.'s Mot. (dkt. 15-1) at 15-21. Plaintiff's third

24   claim assigns error to the formulation of the residual functioning capacity ("RFC"), however, for

25   the reasons stated below, the court will not reach any of these claims because the court's

26   independent review of the record has unearthed a series of threshold errors at step two that require

27   a remand for further proceedings through which Plaintiff's other claims can also be addressed.

28   Accordingly, the following is a summary of the evidence relevant to the ALJ's several errors

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1    regarding the step two evaluation, as well as the ALJ's errors regarding the development of the

2    record.

3           Plaintiff has repeatedly been diagnosed with fibromyalgia[3] and trigger finger[4] of the right

4    middle finger. *See* AR at 307-09, 311-12, 313-14, 315, 318, 319, 322, 324, 326, 328, 330, 332,

5    351-55, 381, 388, 390, 393, 396, 398, 400, 402, 404, 406, 408, 410, 451-54. She has also been

6    repeatedly diagnosed with osteoarthrosis, knee and leg sprain, lumbosacral spondylosis, and

7    lumbosacral joint ligament sprain. *See id*. at 334, 336, 338, 339, 341, 343, 345, 347, 349, 351, 381,

8    388, 452 (describing Plaintiff's chronic pain and her inability to properly ambulate). Plaintiff has

9    also been repeatedly diagnosed with enthesopathy[5] at an unspecified site, coupled with unspecified

10   rheumatism[6] and fibrosis[7]. *See* AR at 339-40, 341, 343, 345, 347, 349. She has also been

11   diagnosed with chronic right shoulder calcific tendonitis, right shoulder impingement, and one or

12   more tears in the rotator cuff muscles in the same shoulder. *Id*. at 415-16. She has also been

13   assessed as suffering from lumbago (pain in the muscles of the lower back), muscle spasms, and a

14   cervical sprain. *See id*. at 442.

15   //

16

17   _____

18   [3] *See Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004) (explaining that common symptoms of
     fibromyalgia "include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a
     pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease.").

19
     [4] Also known as stenosing tenosynovitis – this condition is caused when inflammation narrows the space
20   within the sheath that surrounds the tendon in the affected finger. Its symptoms include finger stiffness,
     tenderness, and finger locking in a bent position coupled with an inability to straighten the affected joint.
21   See website of the Mayo Clinic, available at: https://www.mayoclinic.org/diseases-conditions/trigger-
     finger/symptoms-causes/syc-20365100 (last checked, 09/21/2022 at 12:35 pm).

22
     [5] Enthesopathy is a disorder of the entheses, which are the connective tissues between bones and tendons or
23   ligaments. Enthesopathy occurs when these tissues have been damaged due to overuse, injury, or infection.
     *See generally* Alvarez, Armando, and Tiu, Timothy K., *Enthesopathies*, available on the website of the
24   National Library of Medicine at the National Institute of Health:
     https://www.ncbi.nlm.nih.gov/books/NBK559030/ (last checked, 09/21/2022 at 12:38 pm).

25
     [6] Rheumatism is broadly defined as any disease marked by inflammation and pain in the joints, muscles, or
26   fibrous tissue, especially rheumatoid arthritis.
     *See* https://www.merriam-webster.com/dictionary/rheumatism (last checked, 09/21/2022 at 12:40 pm).

27
     [7] Fibrosis is defined as a thickening and scarring of connective tissue, usually as a result of injury. *See*
28   https://www.merriam-webster.com/dictionary/fibrosis#learn-more (last checked, 09/21/2022 at 12:40 pm).

United States District Court
Northern District of California

1

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

2      A person filing a claim for social security disability benefits ("the claimant") must show

3 that she has the "inability to do any substantial gainful activity by reason of any medically

4 determinable physical or mental impairment" which has lasted or is expected to last for twelve or

5 more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in

6 the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-

7 step sequential evaluation process to determine whether the claimant is disabled (*id*. § 416.920;

8 *see also id*. at § 404.1520). While the claimant bears the burden of proof at steps one through four

9 (*see Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020)), "the ALJ has a special duty to fully and

10 fairly develop the record and to assure that the claimant's interests are considered." *Brown v.*

11 *Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ appropriately set forth the applicable

12 law regarding the required five-step sequential evaluation process. AR at 16-17.

13      At step one, the ALJ must determine if the claimant is presently engaged in "substantial

14 gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), which is defined as work done for pay or profit

15 and involving significant mental or physical activities. *See Ford*, 950 F.3d at 1148. Here, the ALJ

16 determined Plaintiff had not performed substantial gainful activity during the relevant period. AR

17 at 21. At step two, the ALJ decides whether the claimant's impairment or combination of

18 impairments is "severe" (*see* 20 C.F.R. § 404.1520(a)(4)(ii)), "meaning that it significantly limits

19 the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148

20 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant will not be

21 found to be disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the

22 following severe impairments: degenerative joint disease of the cervical spine; obesity; and,

23 sclerotic lesion on the right humeral head. AR at 17. The ALJ found the following conditions to be

24 non-severe: Plaintiff's right knee pain, her fibromyalgia, and her myofascial pain syndrome. *Id*. at

25 18.

26      At step three, the ALJ is tasked with evaluating whether the claimant has an impairment or

27 combination of impairments that meet or equal an impairment in the "Listing of Impairments." *See*

28 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe

United States District Court
Northern District of California

impairments that are considered to be sufficiently severe to prevent any individual so afflicted from performing any gainful activity. *Id.* at § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* at § 404.1525(c)(3). In order for a claimant to show that his or her impairment matches a listing, it must meet all of the specified medical criteria; and, an impairment that manifests only some of those criteria, no matter how severely, does not "meet" that listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment either meets the listed criteria, or if one or more impairments are determined to be medically equivalent to the severity of that set of criteria, that person is conclusively presumed to be disabled without a consideration of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or equals the criteria or the severity of any of the listings. *See* AR at 18-19.

If a claimant does not meet or equal a listing, the ALJ must formulate the claimant's RFC, which is defined as the most that a person can still do despite the limitations associated with their impairments. *See* 20 C.F.R. § 404.1545(a)(1). Here, the ALJ determined that Plaintiff retained the ability to perform work at the light exertional level except that she can occasionally climb ramps and stairs; she can occasionally stoop, kneel, crouch, and crawl; and, she can frequently reach, handle, finger, and feel. *See* AR at 19-23. Following the formulation of the RFC, the ALJ must determine – at step four – whether the claimant is able to perform her past relevant work, which is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *See* 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform her past relevant work, the claimant will not be found disabled. *Id.* § 404.1520(f). Otherwise, at step five, the burden shifts to the agency to prove that the claimant can perform a significant number of other jobs that are available in the national economy. *See Ford*, 950 F.3d at 1149. To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly referred to as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2; or, alternatively, the ALJ may rely on the testimony of a vocational expert ("VE"). *Ford*, 950 F.3d at 1149 (citation omitted). A VE may offer expert

5

opinion testimony in response to hypothetical questions about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy, or the demands of other jobs that may be available in the national economy. *See* 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources for this purpose, such as the Dictionary of Occupational Titles ("DOT"). *Id*. Here, the ALJ determined – based on the VE's testimony – that Plaintiff could perform her past relevant positions as a card room attendant II, and as a data processing auditor. *See* AR at 23-24. Accordingly, the ALJ determined that Plaintiff had not been disabled at any time during the relevant period. *Id*. at 24.

## DISCUSSION

As mentioned above,[8] at step two, the ALJ found that Plaintiff's severe impairments were limited to: degenerative disc disease of the cervical spine, obesity, and sclerotic lesion on the right humeral head. *Id*. at 17. The ALJ also ventured to analyze Plaintiff's right knee pain but found the condition to be non-severe stating that "there is insufficient clinical or diagnostic evidence to show

---

[8] Although no party has raised a step two error, or asserted that the ALJ failed to properly develop the record, the court can, and should, raise and address those issues *sua sponte* because the court has an independent duty to determine whether the ALJ's findings (in every regard) are supported by substantial evidence – and to take any consequentially necessary action. *See Sims v. Apfel*, 530 U.S. 103, 110 (2000) (explaining that an appeal from the denial of Social Security benefits is quite unlike ordinary civil litigation because the underlying claims process before the ALJ is not adversarial). While claimants must carry the burden of demonstrating that they qualify for benefits, the law does not leave them entirely to their own devices; as such, lapses and omissions in pleading or procedure cannot be relied upon to withhold or delay benefits from a claimant who may otherwise be entitled to them. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 n.3 (9th Cir. 1999). While a plaintiff must make his or her own arguments for remand, that does not relieve this court of its independent duty to undertake a fulsome and searching review of the facts in order to render a thoroughgoing and independent determination as to whether the ALJ's findings are supported by substantial evidence, as well as ascertaining the upshot of such a determination. *See Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985). Thus, the failure by Plaintiff or her counsel to raise an error is not an acceptable reason for a court to actively ignore it. *See Ariz. State Dep't of Pub. Welfare v. Dep't of Health, Educ. & Welfare*, 449 F.2d 456, 472 (9th Cir. 1971); *Hess v. Sec'y of Health, Educ. & Welfare*, 497 F.2d 837, 840 (3d Cir. 1974); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2nd Cir. 2009). Other courts faced with this issue have arrived at a similar conclusion. *See e.g.*, *Farley v. Colvin*, 231 F. Supp. 3d 335, 339-41 (N.D. Cal. 2017) (collecting cases); *see also Cortes v. Berryhill*, No. 3:16-cv-01910 (JCH), 2018 U.S. Dist. LEXIS 45256, 2018 WL 1392903, at *2-6 (D. Conn. March 19, 2018); *Peterson v. Comm'r of Soc. Sec.*, No. 16-2912, 2018 U.S. Dist. LEXIS 26355, 2018 WL 953345, at *1 n.1 (D. N.J. Feb. 20, 2018); *Taylor-Tillotson v. Colvin*, No. 13-80907-CIV-WM, 2014 U.S. Dist. LEXIS 177510, 2014 WL 7211888, at *13 (S.D. Fl. Dec. 18, 2014); *Mangan v. Colvin*, No. 12 C 7203, 2014 U.S. Dist. LEXIS 120515, 2014 WL 4267496, at *1 (N.D. Ill. Aug. 28, 2014); *Gravel v. Barnhart*, 360 F. Supp. 2d 442, 452 n.24 (N.D.N.Y. 2005).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   she has any functional limitations related to that condition." *Id*. at 118. As for fibromyalgia, the

2   ALJ concluded that Plaintiff does not have this condition because "the record did not show the

3   claimant had the requisite 11 tender points for a valid diagnosis of [fibromyalgia] syndrome." *Id*.

4   In this regard, the ALJ added that "[w]hile there is a limited diagnosis of [fibromyalgia] in [the]

5   clinical record, the diagnosing sources failed to establish that the required ACR criteria were met

6   or to exclude other co-occurring conditions to explain the claimant's subjective allegations." *Id*. In

7   short, by way of a general statement, the ALJ related that "these conditions either do not meet the

8   durational requirements, are not medically determinable impairments, or otherwise no more than

9   minimally affect the claimant's ability to perform basic work functions." *Id*. As to the <u>*fourteen*</u>

10  other conditions mentioned above – trigger finger, osteoarthrosis, knee and leg sprain, lumbosacral

11  spondylosis, lumbosacral joint ligament sprain, enthesopathy, rheumatism, fibrosis, chronic right

12  shoulder calcific tendonitis, right shoulder impingement, and rotator cuff muscle tears, lumbago,

13  muscle spasms, and cervical sprain – the ALJ's decision failed to even mention, let alone analyze,

14  these conditions at step two or beyond, or to appropriately develop the record as to the limitations

15  occasioned by each of these conditions. The upshot of these errors is to undermine any confidence

16  in the correctness of all of the ALJ's determinations from step three onwards.

17        Step two's evaluation is a *de minimis* test intended to weed out patently groundless claims

18  and the most minor of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987); *Edlund*

19  *v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2005) (stating that the step two inquiry is a *de*

20  *minimis* screening device to dispose of groundless claims) (quoting *Smolen v. Chater*, 80 F.3d

21  1273, 1290 (9th Cir. 1996)); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (step two is a

22  "*de minimis* threshold"). An impairment is non-severe at step two only if the evidence establishes

23  a slight abnormality that has only a minimal effect on an individual's ability to work. *Smolen*, 80

24  F.3d at 1290. As for the fourteen impairments that the ALJ omitted from this analysis, those errors

25  cannot be suggested to be harmless because a review of the ALJ's decision makes it clear that

26  none of those conditions were considered at step three, or during the formulation of the RFC, or

27  beyond; in other words, the omission of the fourteen conditions from the sequential analysis

28  process clearly impacted the ALJ's ultimate non-disability decision (as the record reflects

1    significant limitations attending those conditions). *Stout v. Comm'r, Soc. Sec.*, 454 F.3d 1050,

2    1055 (9th Cir. 2006) (explaining that an error is harmless only if it is not prejudicial to the

3    claimant, or is otherwise inconsequential to the ALJ's ultimate non-disability determination).

4           As for the conditions that the ALJ did analyze but found to be non-severe (right knee pain)

5    or not medically determined (fibromyalgia), the ALJ erred in those regards as well. First, contrary

6    to the ALJ's incorrect determination that Plaintiff's right knee pain was attended with "insufficient

7    clinical or diagnostic evidence to show she has any functional limitations related to that condition"

8    (*see* AR at 18), there is ample record evidence of exactly such "clinical or diagnostic evidence."

9    *See id.* at 334, 336, 338, 339, 341, 343, 345, 347, 349, 351, 381, 388. Furthermore, in July of

10   2019, Plaintiff's treating physician, Christian Bocobo, M.D., rendered a number of conclusions

11   regarding Plaintiff's right knee pain (having already repeatedly diagnosed her with right knee and

12   leg sprains) – specifically, he found: (1) that Plaintiff experiences chronic pain in her right knee;

13   (2) that she cannot climb even a few stairs at a reasonable pace with use of only a single hand rail;

14   (3) that she cannot walk the distance of a city block at a reasonable pace on rough or uneven

15   surfaces; (4) that she is unable to ambulate effectively; (5) that she cannot use standard public

16   transportation because of her inability to climb onto the bus or to engage in the typical jostling and

17   jousting that is ordinarily associated with being a bus passenger; (6) that the condition is expected

18   to last 12 months or longer; and, (6) that Plaintiff is not a malingerer. *See id.* at 452. Accordingly,

19   as to Plaintiff's right knee pain, the ALJ's step two error was founded upon a misapprehension of

20   the record evidence.

21          Regarding Plaintiff's fibromyalgia, in spite of Plaintiff steadily being diagnosed with that

22   condition by more than one physician on numerous occasions (*see id.* at 307-09, 311-12, 313-14,

23   315, 318, 319, 322, 324, 326, 328, 330, 332, 351-55, 381, 388, 390, 393, 396, 398, 400, 402, 404,

24   406, 408, 410, 451-54), the ALJ yielded to the temptation to play doctor and concluded that

25   Plaintiff does not have fibromyalgia because her doctors did not consistently identify at least 11

26   tender points across her body. *See id.* at 18. *See generally Benecke*, 379 F.3d at 594 (where a

27   plaintiff consistently reports fibromyalgia symptoms and her rheumatologist diagnoses her with

28   the disease, an ALJ may not deny its existence due to a lack of supporting objective evidence or

United States District Court
Northern District of California

1    out of sheer disbelief); *see also Contreras v. Astrue*, 378 Fed. App'x 656, 658 (9th Cir. 2010)

2    (Regarding documentation of the tender points, the appellate court has expressly stated that "this

3    Court has not required documentation of a fibromyalgia diagnosis at that level of specificity.");

4    *Dillon v. Astrue*, 2010 U.S. Dist. LEXIS 72240, 2010 WL 2850910, *6 (C.D. Cal. July 19, 2010)

5    (finding the ALJ erred in rejecting a physician's diagnoses of fibromyalgia because their records

6    did not note the number of tender points).

7          Under Social Security Ruling ("SSR") 12-2p, 2012 SSR LEXIS 1, when finding

8    fibromyalgia to be a medically determinable impairment, the Commissioner does not rely on a

9    physician's diagnosis alone; instead, that provision states that "[t]he evidence must document that

10   the physician reviewed the person's medical history and conducted a physical examination," and

11   for fibromyalgia to be considered a medically determinable impairment, a claimant must have (1)

12   a history of widespread pain; (2) at least 11 tender points; and (3) evidence "that other disorders

13   that could cause the symptoms or signs were excluded." *See* SSR 12-2p, 2012 SSR LEXIS 1. It

14   should be noted, however, that "Social Security Rulings do not have the force of law," (*see Quang*

15   *Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989)), and (as mentioned) the Ninth Circuit

16   Court of Appeals has explained that it is not necessary for a physician to provide documentation

17   identifying the specific number and location of the tender points in order for a fibromyalgia

18   diagnosis to be considered a medically determinable impairment. *See Contreras*, 378 Fed. Appx.

19   at 657. Therefore, the ALJ erred at step two – in contravention of these authorities – by finding

20   Plaintiff's fibromyalgia to be the product of an invalid diagnosis. This error was compounded by

21   failing to account for Plaintiff's well-documented states of widespread pain, coupled with 10

22   tender points (at least during one treatment session) (*see* AR at 18), when engaging in the step

23   three analysis or when formulating the RFC. Thus, the ALJ incorrectly applied the law when

24   determining that Plaintiff did not have fibromyalgia.

25          As mentioned above, the ALJ's step two errors – incorrectly evaluating two impairments,

26   and effectively ignoring more than a dozen more – were compounded by the ALJ's failure to

27   properly develop the record as to any of these impairments. Because administrative proceedings in

28   social security matters are inquisitorial, rather than adversarial, ALJs have a special duty to fully

*United States District Court*
*Northern District of California*

9

United States District Court
Northern District of California

1   and fairly develop the record such as to assure that the claimant's interests are considered. *See*

2   *generally Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty is incumbent on

3   the ALJ even when the claimant is represented by counsel. *Mayes v. Massanari*, 276 F.3d 453,

4   459 (9th Cir. 2001). An ALJ's duty to engage in even further record development is triggered

5   when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation

6   of the evidence – as is the case here. *Id*. (citing *Tonapetyan*, 242 F.3d at 1150). Where the duty

7   arises, the ALJ may discharge it "in several ways, including: subpoenaing the claimant's

8   physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping

9   the record open after the hearing to allow supplementation of the record." *Id*.

10          On remand, the ALJ is **ORDERED** to convene another hearing at which the court expects

11   Plaintiff (and any other interested witnesses) to be questioned at length regarding the limitations

12   she experiences as a result of *each* of the above-discussed impairments. The ALJ is **ORDERED**

13   to either subpoena Dr. Bocobo to testify at that hearing, or to send questionnaire(s) to Dr. Bocobo

14   (and any other physician that has participated in diagnosing Plaintiff with any impairment

15   discussed herein), such as to pose an exhaustive and thorough list of questions regarding the

16   limitations attending each and every impairment discussed herein. Thereafter, unless Plaintiff is

17   found disabled, the ALJ is **FURTHER ORDERED** to modify any ensuing opinion to properly

18   evaluate and weigh all medical opinions and to provide any ensuing explanations for such

19   evaluations in compliance with the case authorities (set forth below) that have interpreted the

20   regulations applicable to Plaintiff's pre-2017 application.[9]

21          Under the cases interpreting the regulations applicable to Plaintiff's application (filed, as it

22   was, in December of 2016), medical opinions are "distinguished by three types of physicians: (1)

23   those who treat the claimant (treating physicians); (2) those who examine but do not treat the

24   claimant (examining physicians); and (3) those who neither examine nor treat the claimant

25   (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The medical

26   opinion of a treating provider is given "controlling weight" so long as it "is well-supported by

27

28   ⁹ *See* Def.'s Mot. (dkt. 16) at 2 n.2 ("Because Plaintiff's application here was filed before [March 27, 2017], the new rules do not apply.").

10

1  medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

2  other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *see also*

3  *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). In cases where a treating doctor's opinion is

4  not controlling, the opinion is weighted according to factors such as the nature and extent of the

5  treatment relationship, as well as the consistency of the opinion with the record. 20 C.F.R. §

6  404.1527(c)(2)-(6); *Revels*, 874 F.3d at 654. As to areas of specialization, greater weight is

7  generally accorded to the opinion of a specialist than to the opinion of a non-specialist. *See Orn v.*

8  *Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("Additional factors relevant to evaluating any medical

9  opinion . . . include . . . the specialty of the physician providing the opinion."); *see also Reed v.*

10  *Massanari*, 270 F.3d 838, 845 (9th Cir. 2001). In order "[t]o reject [the] uncontradicted opinion of

11  a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported

12  by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)

13  (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a

14  treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may

15  only reject it by providing specific and legitimate reasons that are supported by substantial

16  evidence." *Id*. (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725

17  (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are

18  comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can

19  meet this burden by setting out a detailed and thorough summary of the facts and conflicting

20  clinical evidence, stating his [or her] interpretation thereof, and making findings." *Magallanes v.*

21  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th

22  Cir. 1986)). Further, "[t]he opinion of a nonexamining physician cannot by itself constitute

23  substantial evidence that justifies the rejection of the opinion of either an examining physician or a

24  treating physician." *Lester*, 81 F.3d at 831; *see also Revels*, 874 F.3d at 654-55; *Widmark v.*

25  *Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th

26  Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993). In situations where a

27  Plaintiff's condition progressively deteriorates, the most recent medical report is the most

28  probative. *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986).

1    As for the evaluation of Plaintiff's testimony in any ensuing opinion, the ALJ is directed to

2    ensure that the following standards are adhered to when explaining how Plaintiff's testimony was

3    evaluated. When a claimant has medically documented impairments that "might reasonably

4    produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give

5    'specific, clear, and convincing reasons for rejecting' the testimony by identifying 'which

6    testimony [the ALJ] found not credible' and explaining 'which evidence contradicted that

7    testimony.'" *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017) (quoting *Brown-Hunter v.*

8    *Colvin*, 806 F.3d 487, 489, 494 (9th Cir. 2015)). "This is not an easy requirement to meet: 'the

9    clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*

10   *v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278

11   F.3d 920, 924 (9th Cir. 2002)). "The ALJ may consider inconsistencies either in the claimant's

12   testimony or between the testimony and the claimant's conduct." *Molina v. Astrue*, 674 F.3d 1104,

13   1112 (9th Cir. 2012) (superseded by regulation on unrelated grounds). Also, while an ALJ cannot

14   reject the severity of subjective complaints merely due to the lack of corroborating objective

15   evidence, the ALJ may nonetheless look to the medical record for inconsistencies. *See Morgan v.*

16   *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999) (finding that "[t]he ALJ

17   provided clear and convincing reasons for rejecting [Plaintiff's] testimony" by "point[ing] to

18   specific evidence in the record—including reports by [Plaintiff's doctors]—in identifying what

19   testimony was not credible and what evidence undermined [Plaintiff's] complaints").

20   Lastly, the following is an explanation of the reasons that the court declines to reach the

21   three claims raised by Plaintiff. Initially, because it appears likely that the nature of Plaintiff's

22   asserted claims will substantially change on remand, there is no need to discuss them as currently

23   formulated. Alternatively, because the case is already being remanded for further proceedings on

24   the ground that the ALJ erred at step two and did not properly develop the record, the court finds it

25   unnecessary to address Plaintiff's remaining issues as they can adequately be addressed on remand

26   because any favorable rulings thereto will not secure for Plaintiff any relief beyond what has

27   already been granted. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we

28   remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative

United States District Court
Northern District of California

12

ground for remand.").

As for Plaintiff's request for a remand for calculation and payment of benefits – that request is **DENIED** as the court finds that the record is not fully developed and that further administrative proceedings are indeed necessary – especially because the ALJ's sequential analysis ended with the step four finding that Plaintiff could perform her past relevant work. *See* AR at 22-23. Thus, while Plaintiff notes that a doctor opined that Plaintiff should be expected to be absent from work more than four times per month (*see* Pl.'s Mot. (dkt. 15-1) at 22-23), neither the ALJ nor Plaintiff's counsel properly developed the record, as might be necessary in this regard, by asking the VE the implications for someone missing work that often. *See* AR at 50-55. Furthermore, as to the details attending Dr. Bocobo's opinion that Plaintiff should be expected to miss four or more days of work per month – Dr. Bocobo simply checked a box to that effect on a form (*see id.* at 454). Since the court's decision to remand for immediate payment of benefits requires the court to do so only when there are no lingering doubts about Plaintiff's disability, and also only in situations when further record development is unnecessary, the court cannot conclude that the instant case presents such circumstances. Putting aside the fact that no one bothered to ask the VE the upshot of Plaintiff missing four or more days of work per month – the court believes that Dr. Bocobo's statement to the effect that Plaintiff would be absent that often itself needs further record development such that the record might clearly reflect the nature and extent of Plaintiff's limitations associated with each of her impairments. In addition to the need for the record to be clear as to what limitations are associated with which impairment, the record should also clearly reflect the durational aspects of each set of limitations.

In any event, as to Plaintiff's other claims, on remand the Commissioner is **ORDERED** to consider the issues raised in Plaintiff's briefing and to modify any ensuing ALJ opinion such as to clearly reflect the fact that all the issues raised in this case by Plaintiff have been considered and addressed under the standards and pursuant to the case authorities set forth herein. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 U.S. Dist. LEXIS 40580, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 U.S. Dist. LEXIS 212380, at *21 (D. Or. Dec. 28, 2017); *Steven M. v. Saul*, No. 19-cv-06991-RMI, 2021 U.S. Dist.

United States District Court
Northern District of California

1   LEXIS 52225, at *16-17 (N.D. Cal. Mar. 19, 2021).

2   <center>**CONCLUSION**</center>

3        Accordingly, Plaintiff's Motion for Summary Judgment (dkt. 15) is **GRANTED**,

4   Defendant's Cross-Motion (dkt. 16) is **DENIED**, and the case is remanded for further proceedings

5   consistent with the findings and conclusions set forth herein.

6        **IT IS SO ORDERED.**

7   Dated: September 29, 2022

8

9

10       ROBERT M. ILLMAN
         United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California